The Army Corps of Engineers is a joint venture between the U.S. Army Corps of Engineers and the U.S. Army Corps of Engineers.  The next argued case is number 18-2206, Hedran Hejrat Co. Ltd. v. US Army Corps of Engineers. Mr. Hennessy. Thank you, Your Honor. May it please the Court, I represent the appellant Hadron Hejrat Ltd., which I'll refer to as HHL. We're here before the Court on the Armed Services Board of Contracts Appeal dismissal of the case for lack of jurisdiction. The issue presented was whether or not there had been a certified claim sufficient to confer jurisdiction for the Armed Services Board of Contract Appeals. Under the statute, the claim doesn't have to be certified to create jurisdiction, right? I agree. I mean, the entire, from the contract cleaning case analysis, there are no magic words, there's no particular formula. What needs to happen is that the contracting officer obtain clear and unequivocal statement regarding the basis of the amount of the claim. We have a record here with at least, as of March 5th, 2015, not only was there a clear and unequivocal statement about the basis of the claim, but there was also a certification under penalty of perjury, which certainly makes that a non-routine invoice, a non-routine, placing him on notice, or at least the Army Corps of Engineers on notice, that this is a closeout, this is a final request. And there is, I think, an error in the Armed Services Board of Contract Appeals analysis, in which they said that the HHL avoided language indicating that this was a request for a final payment. This is a contract that was terminated in 2010. There was no doubt in all of the correspondence, in all of the efforts to wind this contract down, that this is a final request for payment. And in fact, you know, this has been recognized in James Ellett Construction Co. v. United States, 93 F. 3rd, 1537, that a contract, and if I can quote, a request for payment submitted after the government has terminated the contract during its performance is a far cry from a request submitted in accordance to an expected or scheduled progression of a contract performance. Clearly, we have terminated the contract. Clearly, we have a request for final payment. We have a certification under penalty of perjury. There is a sum certain, $4,138,613. That's a sum certain. I think clearly, at this point, the Armed Services Board of Contract Appeals, especially after Charita Williams' final disposition of HHL's request, it's appropriate to be before the Armed Services Board of Contract Appeals. In the gray brief at 5, you argue that the court misinterpreted the holding of Case v. United States. And there, we affirmed the principle that a contracting officer's final decision is invalid when the contracting officer lacked the authority to issue it, and an invalid contracting officer's decision may not serve as the basis for a CDA action. You're correct that we found there that the contracting officer was not divested of authority to issue a final decision. Now, the argument rejected in that case was that the contracting officer was divested of jurisdiction on the basis that the DOJ had exclusive authority over claims that are in litigation. Here, the issue is whether a valid claim was submitted at all, which would speak to the contracting officer's authority to issue a final decision on that claim. Why doesn't the case support the government? Well, I'm ending for the very reason you articulated. First of all, what the government neglected to inform the court about in its briefing, it was Case 1 and Case 2. Case 1 was pending with the court. The Department of Justice was lead counsel. At that point, the contracting officer is divested of their authority. But then while Case 1 was pending, Case 2, which is a different claim under the same, between the two contracting parties, was filed, and there was a request for a final decision made of the contracting officer. Now, what is missing from the government's brief is the fact that the contracting officer didn't respond. So there was a deemed final decision for the lack of response within 60 days. So it's not like there wasn't a certified claim. There was a certified claim. Just what was absent was a final decision by the contracting officer on Case 2, which the court deemed to be a final decision for the expiration of time. However, Case 2 became moot because Res Judicata eliminated the issues that would have been at stake in Case 2. Case 1 was decided on its merits. That's interesting. I'm happy to answer any questions, but I bet you would be more interested in asking questions after the government's rates are briefed, so if you'd like, I reserve the balance of my time. If we agree with your position, what happens next? He would remand the case back to the Board of Contracts' Appeals for a decision for trial on the merits. That should be able to make our case about breach of contract, lack of good faith, change, equitable adjustment of the contract, et cetera. So it would invest the Armed Services Board of Contract Appeals with the authority to decide the case on its merits. In the blue brief, you argue that HHL's sworn affidavit of March 5, 2015 met the requirements of the CDA. Are there any other communications by HHL with the court which constitute a valid claim, and if so, which ones and where do you raise those? Well, I mean, essentially the analysis begins, again, the problem with Daniel Portillo's response to the March 5, 2015 claim made under penalty of perjury is that when he answered, he answered the previous April 16, 2014 claim. He didn't answer the March 5, 2015 claim. So at that point, my client is trying to figure out what's going on. You answered the wrong request, and we go into this whole period in which he cannot get the attention of the U.S. Army Corps of Engineers. So the case is then, after he submits a request through Facebook, which finally attracts the attention, Charita Williams has the March 5 request. Charita Williams is the contracting officer. The question is which documents constitute a claim in your view. We know about the March 5. That would be it. It was submitted under penalty of perjury. So that's only it. Sorry? That's it. Well, that's the one that's submitted under penalty of perjury since it's a claim of over $100,000. Well, I assume you think you've answered my question. What I'm getting from you is there is no other communication, which constitutes a specific valid claim. Well, I hope I'm answering your question when I admit that you were. What you seem to be saying is Facebook, for example, were trying to get their direct their attention back to the March 5. Yes, because well, March 5. But that's not a separate claim. Well, March 5 is the one that's certified under penalty of perjury since it's over $100,000. It must be a part of the claim. So I can't stand here and say, well, the email of, you know, February. Then don't. Okay. I'll stop there. Okay. Thank you. Thank you very much. Thank you, Your Honor. Ms. Chopra. May it please the Court, the government respectfully request that you affirm the decision of- Is it your position directly contrary to the in-bank decision for reflect-own, which says that request for an equitable adjustment can constitute a claim under the CDA? No, Your Honor. It's not. Reflect-own- Do you agree that the request for equitable adjustment? Yes, Your Honor. In certain circumstances- So what's the matter with the request for equitable adjustment they made here? Reflect-own does hold that a request for equitable adjustment can constitute a claim, provided that it provides the contracting officer with indication that they are intending to make a claim. They are not, you know, this I'm certain, the writing, but also the intent to request a final- a contracting officer's final decision. So on its face, the March 5th request for equitable adjustment is sufficient, but that somehow they indicated that it wasn't a claim? On its face, it's not sufficient because it doesn't indicate an intent to request a contracting officer's final decision. And when specifically- Wait a minute. What's the matter with it? Under reflect-own, facially, what's the matter with it? Facially, Your Honor, it doesn't request an intent to finalize negotiations and specifically request a contracting officer's final decision. You don't have to use that specific language. You do not, Your Honor, have to use specific language, but you do have to make it clear that your intent is to request a contracting officer's final decision. And the magic words- This kind of mechanical approach that the government took was exactly what we rejected in reflect-own. And you don't have to use particular magic words. You just have to submit something which is a non-routine claim for money, and that's what the March 5th document is. You have to make an intent. You certainly have to make an intent that REA is requesting a contracting officer's final decision. A claim is different than- ELLIT says you have to use language that says you're requesting a final decision. Maricopa says you have to use language that you're requesting a final decision. You have to make it clear to the contracting officer that you are requesting a final- You have to make it clear. There is no magic, specific word, Your Honor, but you do have to make it clear that that is your intent. The request for a final decision claim has different significance than REA, and it does trigger other effects, and you have to make it clear to the contracting officer that that is what you are seeking. But Reflectone says that a request for equitable adjustment can be a claim. I mean, I just don't understand your argument. I agree. They made a request for an equitable adjustment. Reflectone says that can be a claim. What's the problem? Reflectone says you have to make it clear, Your Honor, and in later cases make it clear that you have to make it clear that you are requesting a final decision, and it has to evidence an intent for a contracting officer's final decision. What Hedren and Hadjot did is, yes, they titled it in REA, yes, and we specifically said to them, please tell us, do you want us to treat this as a claim, and they specifically said no. We specifically asked them, and claims do have consequences, Your Honor, and we specifically asked them to clarify that intent and to say, do you want to submit a claim? Please tell us if you want us to treat this as a claim. And they specifically said over and over again no. That's a different question. That's a different question. I'm asking you what's the matter on its face with the March 5th document seems to be exactly the sort of thing that constitutes a claim under Reflectone. What language in Reflectone says that a request for equitable adjustment isn't a claim? It says the opposite. It says a request for equitable adjustment can be a claim. We're not disputing that a request for equitable adjustment can be a claim, but what the other cases do, OLS and Maricopa, is that it must make it clear that you're requesting a COFD. A request for equitable adjustment can come at any time, even after the conclusion of a contract, and a claim is different because a claim triggers the contracting officer's decision. It triggers the statute of limitations. It triggers appeal rights, and you want to be entirely sure that when they're intending to make a claim,  because that claim cuts off the negotiation process, it triggers the statute of limitations, it triggers the appeal rights, and you want to be sure of that intent, and that's why Elliott and Maricopa is making clear you must evince an intent to request a contracting officer's final decision. So you have, yes, albeit the fact it's titled as an REA, which is not entirely determinative under Reflectone. So they have to use the words we request a final decision? They certainly have not used the words we request a final decision. No, of course they haven't. Do you contend that they have to use those words? They certainly have to use not necessarily those exact words, but they have to use something specific to that effect to indicate that there are no longer It's a non-routine request for money. They said, well, you owe us the money. But they have to make it clear that they are saying, I am concluding negotiations at this point. I want a claim. I am done with you. Issue your final decision and I'm going to What case says that? That's our interpretation. Ellett and Maricopas make it clear that you must evince an intent to request a contracting officer's final decision. So when they say we are requesting the total sum of $1,776,907 in no sense in the form of compensation, that's not a request of anything? Pardon me, can I just ask, Your Honor, where exactly? Appendix 72, and this is the request for equitable adjustment? Yes. So you're saying that's not a claim? That is a request for a sum certain, which is only one aspect of a claim. You still need to evince an intent to request a contracting officer's final decision. And it is an intentional requirement. It's written into the CDA to ensure that the agencies do have that authority to make that final determination. And an REA still invites negotiations. It's not a conclusion in the process. The claim requirement is specifically in there saying, this is our final request, issue your decision, and then we may take it further. And the case is meeting What about the language in the certification in which Mr. Amarquial says being fully aware of the contract from the beginning to the end? Isn't he evincing that it's over? He is evincing that it's over, but as I said with the REA, you can still submit an REA after it's over. He's not evincing an intent to request a contracting officer's final decision. We don't dispute that the contract was over. Performance was complete. There was nothing else left to do. We don't dispute all that, Your Honor. But it's certainly not an intent to request a final decision. And most notably, when we came back to them over and over and over again, they made it clear that this wasn't their intent. And had they intended this to be a request for a contracting officer's final decision, then their appeal time would have already run long before that because they would have had their deemed denial in 2015, and they would have had to go to the ASPCA 90 days later, but they didn't. They never viewed this as a request for a contracting officer's decision. They never viewed this as a claim at the time they submitted it, and that was confirmed straight through to 2017 when they said, please, if you disagree with us, we'll submit a claim. And they said that over and over and over again. They never viewed this as a claim. They consistently, as the Armed Services Board of Contract Appeals recognized, they consistently affirmed that their intent was not to submit a claim, was to have an REA and continue this negotiation process. And they never treated this, they might contend it now, but they never treated this as a claim from any point in time from 2015 through 2017. It was only, you know, even in 2017, a few months before they filed the appeal, they said we intend to file a claim. They did not. Instead, they came to the Armed Services Board of Contract Appeals. They never at any point. So what happens, in your view, what happens to them now? They're out of luck? Unfortunately, Your Honor, yes, sir, they are out of luck. You say that nothing can be cured? This is a fatal flaw? They left out the word claim? At this point, Your Honor, this is— At this point or forever? Forever, at this point going forward. Had, if we were, if this court were to find that this were a claim, it would go back and they would still have the ability to correct their defective certification. But because this is not a claim, the six-year statute of limitations has passed, Your Honor. So what's the difference between a claim and a request? A claim is a—specifically triggers the final decision requirement. It's a necessary precursor for a jurisdiction request for equitable adjustment. It's a negotiation that throughout the process of the contract, and that's how the CDA is written, it's intended to allow agencies to resolve disputes, go back and forth, fix things, correct things, go throughout the process. Then the claim part comes in and says, we are now entering a dispute phase, a true dispute. We're posturing this up for litigation. We are going forward. And you file that claim, you get your decision, you get your appeal right to the board, court of federal claims, and ultimately to this court. Your position sounds so mechanical. I mean, our decisions, like Elliot, on which you yourself rely, so you don't have to use the word final decision. It says as long as the context is clear, it's sufficient. And Reflectome says a request for equitable adjustment is sufficient. I mean, you know, it really sounds to me as though you are asking for the exact magic words that we've said aren't required. We're asking for them to clarify their intent, and we specifically respond— What does that mean? What are they supposed to say that they didn't say? Yes. This is our final request in this matter. Please conclusively decide this. Something of the sort that indicated an intent to end negotiations, enter that dispute process in a claim. Yes, there are no magic words, and this court has made this clear, but Congress specifically— What you really want to say is yes. That's what they were supposed to say. When the contracting officer said, are you seeking a final decision? All they had to do was say yes, Your Honor, and we would have issued that decision and triggered their rights. We specifically said to them in response to that March 5th letter, we specifically said to them, we deny the balance and advise you to seek a claim. They then came back again, over and over and over again, and said that wasn't a claim. We intend to file a claim. The contracting officer read it as a claim because he read it what he characterized as a final decision. He didn't actually. He might have said we intend to submit a final decision, but then when he went back and he actually issued the response, he didn't clarify it as a final decision. It was not titled as a final decision. It was titled as a response to an REA. He did not treat it as a final decision. He might have erroneously said that in an email, but it was not apparent from the face of the document that he was ever treating that as a final decision. It certainly was not. And HHL made it very clear in 2016. They said they contacted USAIS over and over again. And ultimately on February 21st, they said, finally now we're ready to submit a claim. How do we do this? They didn't submit anything. Then they came back again. We issued them a letter in 2017. They acknowledged our decision and once again said they would file a claim. They filed the dispute clause, specifically filed the FAR disputes clause that's required to submit a claim. They twice specifically said we have not submitted a claim. Please, now we intend to submit a claim because we know we have to. And they didn't do it. Instead they came to the board, and the board properly dismissed them for failure to submit a certified claim. So is there anything in the regulations in the FAR which says unless you use these precise words, or you must use these precise words in order to get our attention? No, Your Honor. There is no requirement. And the case law makes it clear there is no requirement of specific magic words, but you still must advance an intent to request a final decision. So how do all of these thousands and thousands of businesses contracting with the government know that there are a few magic words that have to be used or else they're out of the opportunity for any sort of compensation? In this case, Your Honor, we specifically advised them, referred them to the dispute clause. They knew that. And all they had to say at that point is, convert our RA treated as a claim. And certainly, yes, we do respect that. But there might be instances where it isn't fair, but that is an issue for Congress, and it's not the issue here. The issue here is HHL was specifically advised. They clearly understood the claim requirement. They did not follow it. They had counsel at a time. They somehow obtained counsel in June of 2017 when they filed this appeal. And to the extent that there was any ambiguity in their filings or any sort of discrepancy, they could have filed a claim at that instance and not been time-barred, but they chose not to. It's very clear from the record that at no point in time, HHL intended their submission to be a claim. If they had intended that 2015 submission to be a claim and wanted to go to the ASVCA, they would have had to do that in the summer of 2015, not have waited until 2017. You only get 90 days to appeal to the ASVCA. And if they thought that that was a claim, they would have had to go to the ASVCA two years before they actually did. The evidence in the documents are very clear that no one ever intended those documents to be a claim. And to the extent that USA has had any question or concern, they specifically said to HHL, please tell us your intent. We don't want to... If you want to make a claim, we want to issue you a decision. HHL said no. They said we will submit a claim over and over again, and they did not. USA specifically tried to work with them, tried to apprise them of the requirements. Yes, Your Honor, there might be situations where this might be unfair to some contractors based on the statutory scheme, but this wasn't the case. HHL clearly... When were they first represented by counsel? I cannot say when counsel specifically came into this, but counsel specifically filed this appeal in June of 2017. And the... I don't know specifically when counsel came in before that, but at some point in time, before June of 2017, before the statute of limitations had run, they were represented by counsel. That would be a question for the other side. Unless this court has further questions, ICM, I'm almost out of time, and we respectfully request you affirm the decision. I do have a question, and that is, is there authority in which... including the board contract, if necessary, in which a party has submitted something, which was a little vague, but the board or a court said... or us reviewing said, no, that constitutes a sufficient claim. This court certainly can do that. They certainly can find that the documents were sufficient. No, no. Site authority. Case authority. That says what, Your Honor? In which a contractor, let's say they're seeking equitable adjustment and the contracting officer says, no, no. Do you want to file a claim? And they go, no. And it's specific enough to actually constitute wanting to file a claim. And then the situation, Your Honor, would be that they would then appeal to the ASBCA. Right. And then certainly I'm not aware of an official case that actually says this, but certainly the ASBCA would then... they would take that wishy-washy communication where they originally said, no, they filed, and the ASBCA, yes, Your Honor, could interpret that document, find it was sufficient. But you don't know any cases in which they interpreted it that... I don't know any cases... ...that kind of vague language. I don't know any cases that are exactly factually identical to this where we have a wishy-washy letter, then a statement of intent, I do not intend to submit a claim, then an appeal to the ASBCA where the ASBCA says, no, in fact, ignore your prior statement that it wasn't a claim and I find it to be sufficient to be a claim. I am unaware of any case in the ASBCA, the Court of Federal Claims, or any case that specifically addresses that factual circumstance, Your Honor. So unless the Court has any further questions, I respectfully request that you affirm the decision of the Armed Services Board of Contract Appeals for dismissal of the lack of jurisdiction. Thank you. Mr. Henderson? Judge Wallach, let me address your question to counsel directly. I do know of a case. It's the case in which all of the jurisprudence based on the certified claim is based. It's Contract Cleaning Maintenance v. United States. In that case, this Court reviewed all of the correspondence between the parties, and through its analysis of the correspondence found that there had been a claim made. So the correspondence said, do you intend to file a claim? And the responses uniformly were, no, we're pursuing equitable adjustment. Well, I think, first of all, my client is a non-native English speaker. I knew you were going to say that. And there's a lot of representations. When did counsel first come into the case? Were you counsel the first time?  They had assistance of a lawyer in Dubai to draft the March 5, 2015. Okay. But there's a lot of talk about what my client understood, what they intended. There's nothing in the record. There's no evidence of any of that. What's in the record is the communications. And the communications say, do you intend to? No, we are pursuing equitable adjustment. Well, let me go back... Repeatedly. ...to address what the purpose of the CDA is. This court has addressed that very issue, and I'm going to read it, if you don't mind. This comes from Do Well Mechanic Shopping v. United States, 870 F. 2nd, 637. Among the objectives of the CDA are to induce resolution of more contract disputes by negotiation prior to litigation, and to encourage the informal quick resolution of disputes. My client was dealing in good faith that the Army Corps of Engineers would be negotiating with him, thus the multiple requests for him to answer him about his inquiries. The, you know, that there is this talismanic kind of interpretation of what the precise words are is so contrary to this court's ruling about what is required Let me just point out the... What's the... You know, I really do understand the failure to effectively communicate both ways, and its inherent existence when you're operating in non-English speaking environments. But what are the implications for the FAR if you just start straying away from language? The question is, when is it appropriate to go to the Armed Services Board of Contract Appeals? And clearly, when you have, as Charita Williams did, issued a ruling that says, this is the final decision of the government, and there has been a certified, under penalty of perjury, claim for some certain, and a demand for contracts that's been terminated for five years, it makes no sense to keep going back to the Army Corps of Engineers for... It's now time to go to the Armed Services Board of Contract Appeals. And, you know, let me just... In terms of the implications, I need to speak to what the implications are if we adopt this very rigid approach the Department of Justice is suggesting. Not only would you require... The Justice Department has talked about triggering the statute of limitations, it being, you know, very formalistic. Not only are they asking for magic language, but you would have to, like filing of a complaint, you would have to provide proof of service. You know, you would have to effect service on the... Because then you're talking about a specific trigger in terms of statute of limitations, and notice that, you know, this magic language has been provided to the Army Corps of Engineers. So the question ultimately is, is it now appropriate to be before the Armed Services Board of Contract Appeals? Well, I guess the problem, it seems to me here, is when you get communication from the CO that says this is the government's final decision, why would you have any reason to believe that there was a view that what you submitted wasn't sufficient? If the CO had said, no, I don't construe this as a claim, you've got to go back and do something else, then it could have been corrected in a timely way. But when the CO says, no, I'm rendering a final decision, that seems to be an agreement that what's been submitted could lead to what was a request for a final decision. I agree. And this Court has addressed that in James Ellett Construction Company v. United States, 93 F. 3rd, 1537, when it asked, it does not speak of appealing decision back to the contracting offer by submitting a new claim, which would be a futile act. This is a final determination on a some certain claim sworn under penalty of perjury, non-routine request for final payment on a contract that's been terminated forever. Five years. That's it. Anything else for counsel? Anything else for counsel? Thank you. Thank you, Your Honor. Thank you both. The case is taken under submission. And that concludes this panel's argued cases this morning. All rise. The Honorable Court is adjourned for tomorrow morning at 10 o'clock a.m.